Max MEHLBURGER et ux v. Charles W. NORWOOD ET AL

5-4244                                                    420 S. W. 2d 81

Opinion delivered November 6, 1967

*Boyce R. Love,* for appellants.

*Christopher Mercer Jr.* and *John P. Gill* and *Isaac A. Scott,* for appellees.

George Rose Smith, Justice. This litigation began as a suit brought by the Mehlburgers to enjoin their downstream neighbor, Charles W. Norwood, from cutting timber upon a 100-acre tract of riparian land that was concededly formed by the Arkansas River as an accretion. Norwood, and later on his downstream neighbor, McAninch, contested the Mehlburgers' assertion of exclusive ownership of the disputed tract, their contention being that the tract in controversy came into exist-

ence as an accretion to all three riparian ownerships. The trial court upheld the defendants' position and divided the accretion among the three sets of litigants in accordance with the rules governing the apportionment of such lands. As we view the case, the basic question for the chancellor was a narrow issue of fact. We affirm his decision.

The record is voluminous, but we may avoid a wealth of needless detail and put the fundamental issue in focus by comparing the shoreline as it existed immediately after the disastrous Arkansas River flood of 1927 with the shoreline as it existed when this suit was filed in 1963.

The 1927 deluge swept away a substantial amount of soil and left on the west bank of the Arkansas River as riparian land, the tracts later acquired by the Mehlburgers, the Norwoods, and the McAninches. The Mehlburger tract was upstream, to the north, the Norwood tract was in the middle, and the McAninch tract was downstream, to the south. The boundary between the Mehlburger tract and the Norwood tract was the Maumelle River (or Creek), which emptied into the Arkansas at that point. All three tracts, as we have indicated, were bounded on the east by the Arkansas River.

In 1963 (and for some years earlier) the Mehlburger tract was the only one of the three that still touched the Arkansas River. A long narrow peninsula—the land now in dispute—had formed by accretion and extended downstream from the Mehlburger tract for a distance of a mile or more along the Arkansas River. That peninsula was separated from the Norwood and McAninch lands by the Maumelle River, which now ran southward in front of the Norwood-McAninch tracts and emptied into the Arkansas at a point far downstream from what had been its mouth in 1927.

The pivotal issue below was how that change in the shoreline, and in the channel of the Maumelle, came

about. The Mehlburgers contend that the peninsula gradually formed as an accretion attached only to their tract and extended slowly southward, forcing the channel of the Maumelle to bend to its right so that that stream continuously separated the growing peninsula from the Norwood-McAninch properties.

The appellees contend, and the chancellor found, that the accretion began to form against the appellees' land on the mainland, south of the mouth of the Maumelle as it existed in 1927. After 1940 the Maumelle changed its course, not gradually but abruptly, cutting through the accretion so that accreted lands already attached to the Norwood-McAninch tracts were left on the east side of the Maumelle. If the appellees' version of the facts is correct they are entitled to prevail under our decisions in *Adkisson* v. *Starr,* 222 Ark. 331, 260 S. W. 2d 956 (1953), and *Dowdle* v. *Wheeler,* 76 Ark. 529, 89 S. W. 1002, 113 Am. St. Rep. 106 (1905). (We are not persuaded by the appellants' argument that the *Adkisson* and *Dowdle* cases may be distinguished on the ground that the Maumelle is a navigable stream, as the trial court found it to be. In our opinion the navigability of the Maumelle is immaterial.)

No useful result would be attained if we should try to recount all the testimony bearing upon what is basically an issue of fact. The conflicts in the evidence cannot be reconciled. We may say, however, that in weighing the proof we are especially impressed by the physical facts reflected by aerial photographs taken by the U. S. Corps of Engineers. The earliest picture, made in 1940, shows the Arkansas River flowing against the three rival tracts, much as it did after the 1927 flood. But a later photograph, taken in 1948, reveals unmistakably that a sandbar (which was the embryonic stage of the accretion now in controversy) had built up in front of the appellees' land and that the Maumelle River crossed the middle of that sandbar at right angles to the channel of the Arkansas River and emptied into that stream at a point far north of the mouth of the

Maumelle as it existed in 1963. Convincing proof such as this tips the balance in favor of the chancellor's decree.

Affirmed.

BYRD, J., disqualified.